Thomas J. Nolan, SBN 48413
Shira Kieval, SBN 269409
NOLAN, ARMSTRONG & BARTON LLP
600 University Avenue
Palo Alto, California 94310
650/326-2980 – Telephone
650/326-9704 – Facsimile
tnolan@nablaw.com
Attorneys for Defendant Melvin Shields

Frank R. Ubhaus
BERLINER COHEN
Ten Almaden Boulevard, Eleventh Floor
San Jose, CA 95113-2233
408/286-5800 - Telephone
408-998-5388 – Facsimile
fru@berliner.com
Attorney for Defendant Michael Sims

Graham E. Archer
95 S. Market Street, Suite 300
San Jose, CA 95113
408-596-9451 - Telephone
408-596-5657 - Facsimile
graham@garcher.com
Attorney for Defendant Sam Stafford

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES, | Case No.: CR 12-00410 RMW |
| Plaintiff, | |
| vs. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |
| MELVIN SHIELDS, MICHAEL SIMS, SAM STAFFORD, | Date:   Monday, September 30, 2013<br>Time:  9:00 a.m. |
| Defendants. | Before the Honorable Judge Whyte |

The defendants have filed a constitutional motion intended to protect their rights to due process, a fair trial, and effective representation of counsel.  Contrary to the view taken in the government's opposition, this is not a discovery motion.  Moreover, the defendants' constitutional

rights must be considered in the context of this specific case. In this case, at this time, the government still has not adequately informed the defendants of the charges made by the Grand Jury, and from its own filings does not appear to be prepared to bring the defendants to trial on those charges. This makes it impossible for counsel to investigate this case and effectively prepare for trial. Therefore, the defendants continue to request that the Court dismiss the indictment(s) without prejudice.[1] In the alternative, the defendants would request that the trial date be vacated and no new trial date be scheduled until both the government and the defendants are prepared to proceed.[2]

## I.      An Unfair Reading of the Court's Order

The government argues that it complied with the Court's Order for it to provide defendants with a Witness List and Exhibit List 60 days in advance of trial notwithstanding the fact that (1) it failed to identify by name two dozen witnesses; and (2) it only preliminarily identified possible summary witnesses. Presumably, these summary witnesses will testify regarding at least the 14,493 financial documents included on the Exhibit List. Given the fact that the defendants did in fact place investor money and bank money in real estate investments, their

---

[1] Since the defendants filed their motion to dismiss on September 16, 2013, the government has filed a Superseding Indictment in this matter. As discussed below, the Superseding Indictment does not resolve the problems addressed by the defendants' motion to dismiss, and like the original indictment in this case it too should be dismissed without prejudice.

[2] If the Court is concerned about the time or money being expended by the defendants in preparation for trial, the defendants would certainly welcome the appointment of an impartial referee who is familiar with the constitutional requirements for the effective preparation of counsel, and who could report back to the Court regarding the significant time and effort that defendant counsel are putting into this case – and the significant time and resources that could be saved if the government were to provide defense counsel with (1) witness contact information, and (2) timely and well documented summary documents and expert disclosures.

testimony will be the cornerstone of the government's fraud allegation.

Additionally, the government (3) continues to refuse to disclose whether the summary witness will be presented as an expert witness; and (4) has neither created[3] nor provided the defense with the Exhibits that the summary witness will rely upon.

Moreover, (5) the government provided the defense over 165 pages of documents listed on the Exhibit List several days <u>after</u> the Exhibit List was filed.  These documents (6) included five alleged "Actual Invoice[s]" that had not previously been provided to defense counsel and appear to be central to counts of Bank Fraud and Making False Statements to a Bank, as well as the overarching Conspiracy charge.  Dkt. 122, Cts. 1, 22, 29.

(7) The government has even filed a superseding indictment since providing the Witness List and Exhibit List that charges new crimes and expands the list of investors.[4]

The government's insistence that it has complied with the Court's Order is an unfair reading of the Court's Order.  The government's lists are works-in-progress.

The defendants understand that plans and trial strategy can change in the lead-up to trial, and the Court's Order likely left room for the government to file an amended witness list or exhibit list.  However, the government should have undertaken a serious effort to finalize the lists by the August 26 deadline.

Given the complexity of this case, the financial hurdles that defense counsel must pass through to investigate the case or analyze financial documents, and the burden of working with the Marshal Service (issues discussed below), the defendants required and continue to require the

---

[3] *See* Dkt. 124 at 16 (explaining that the government "will provide such charts (including the references to the support for such charts) as soon as practicable."

[4] In addition, it has taken the government a month to respond to discovery requests propounded two months before trial.

full sixty days' notice ordered by the Court.

## II.   Issues Relating to CJA Funding and Marshals Service are Critical.

The government argues both that issues regarding CJA funding "are irrelevant," and that "[t]he protocol of the CJA and the Marshal . . . provide a workable means for the defendants to ensure effective preparation in advance of trial."  Dkt. 124, at 17-18.

At the same time, the government essentially argues that the defendants should begin trial before they are prepared.  *See* Dkt 124 at 18 ("As the United States has previously indicated that it expects its case-in-chief to take at least a month, at minimum, the defendants in reality have somewhere at least 60 days before they would be calling witnesses in their case-in-chief.").

To begin trial before being prepared means that the defendants risk foregoing either their right to present an opening statements before the prosecution presents its case in chief, or foregoing their right to effective assistance of counsel.  *See Saesee v. McDonald*, -- F.3d --, 2013 WL 3970091, * 3 (9th Cir. Aug. 5, 2013) (explaining that defense counsel's promises to the jury in opening statement about witnesses appearing can be IAC when they are not fulfilled).   As explained in the defendants' opening brief, defense counsel is constitutionally required to complete his or her investigation <u>before</u> trial.  *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968); *see also* ABA Standard 4-5.1(a) & 5-6.1(b).  If unprepared for trial, he or she must seek to withdraw.  *See* ABA Standard 4-8.6(c).

The government also ignores clearly established law requiring the defendants to conduct their own investigation into the government's case rather than relying on government documents. *Alcala v. Woodford*, 334 F.3d 862, 891-92 (9th Cir. 2003) (citing *Rios v. Rocha*, 299 F.3d 796 (9th Cir. 2002)).

Issues relating to CJA funding and the Marshals Service are critical in this case.  Federal Rule of Evidence 1006 requires the government to provide summary charts "at a reasonable time and place," meaning early enough "that the opposing party has adequate time to examine the records to check the accuracy of the summary."  *United States v. Rangel*, 350 F.3d 648, 651 (7th Cir. 2003).  Thus, the government's disclosure duty necessarily requires the government to acknowledge the procedural hurdles that the defendants are required to step through in order to check the accuracy of the summary.  In this case, that means obtaining the summary charts, obtaining an estimate from the consulting expert for the project, applying for and obtaining funds from the Court for the project, and having the expert perform the necessary analysis <u>before trial</u>.[5]

Moreover, the practical reality of subpoenaing witnesses to testify in this case involves obtaining the witness's exact location, and giving the Marshals Service 30 days to serve the witnesses, again <u>before trial</u>.  Investigator funding in this case has been limited, and at least one defense investigator has been ordered to make contact with potential witnesses by phone <u>only</u>.  It is the defendants' position that the government is required to provide defense counsel with the contact information in the government's possession.  The government is within its rights to argue against this, but must recognize the practical results of refusing to provide defendants with this contact information – just as the Court should consider these practical realities when deciding how to resolve the issues presented in this case and in this motion.

The government's duties go beyond those set out in Rule 16, the Jencks Act, and *Brady*. "The duty of the prosecutor is to seek justice, not merely to convict."  ABA Standards 3-1.2(c). "It is an important function of the prosecutor to seek to reform and improve the administration of

---

[5] Defense counsel has attempted to get an estimate for this work and applied to the Court for funding based on the little information available to defense counsel at this time.  That funding application remains pending.

criminal justice. When inadequacies or injustices in the substantive or procedural law come to the prosecutor's attention, he or she should stimulate efforts for remedial action."  ABA Standards 3-1.2(d).

The government may disclaim any responsibility for the inadequacies in the system, but the government nonetheless retains a duty to help the defendants mitigate these issues so that the defendants receive a fair trial.[6]  Absent efforts by the government to work with defense counsel to mitigate the inadequacies of the system, the responsibility to do so falls to the Court.

### III.   Has This Case Ever Really Been Narrowed?

The government continues to argue that this case is clearly circumscribed without (1) disclaiming reliance on overbroad language that continues to be included in its Superseding

---

[6] The government cites *United States v. Gatewood*, 2012 WL 2286999 (D. Ariz. June 18, 2012) in support of its position that logistical problems do not entitle a defendant to unredacted discovery.  In *Gatewood*, the government was

> unwilling to give the defense unredacted discovery because "[t]he victims in this case have alleged that they have been raped by the defendant," "many of the victims are scared of the defendant," and "recent investigation has revealed that friends and family of the defendant have been contacting several victims and witnesses ... [and] attempting to intimidate them and keep them from cooperating."

*Id.* at * 1.  Moreover, the government in *Gatewood* went "so far as to contact witnesses and victims on behalf of Defendant regarding requests for interviews" and provided them with "requested criminal histories."   *Id.* at * 1-* 2.   And the court faulted the defendant for not providing a justification for requesting the redacted information beyond stating that he "seeks to research the criminal and public records of the witnesses and victims."

Here, the defendants are attempting to contact and potentially subpoena alleged victims of financial fraud, and other witnesses, located throughout the country.  This is directly connected to the defendants' need for the contact information.  And the defendants have described exactly what the logistical hurdles are that justify the claim in this case.

Indictment, or (2) disclaiming an intention to prove criminal liability in reliance on alleged investments and investors not listed in the Superseding Indictment.

Even with the filing of the Superseding Indictment, the defendants continue to face an indictment that relies on such phrases as "one or more of several," "including but not limited to," and "among other things."

Additionally the Superseding Indictment lists four investors who were not included in the initial Indictment <u>or</u> the Bill of Particulars.[7]

The government argues that the Witness List narrowed the case because it shows that the government has decided not to <u>call as witnesses</u> 25 of the investors listed on the Bill of Particulars. *See, e.g.,* Dkt 124 at 9 ("The witness list makes clear that the United States is **not** seeking or intending to call all of the victims previously on its Bill of Particulars.").  However, at no point has the government disclaimed its intention to rely on representations allegedly made to these investors, or the transactions allegedly undertaken with these investors, in its case in chief. Rather, it still intends to prove that the defendants were responsible for a "$21 million investment fraud scheme" – which includes all of the money from all of the investors.  *See* Dkt. 124 at 17.

### IV.     Recognition of the Complexity of this Case

Interestingly, in at least part of its opposition brief, the Government has finally recognized the complexity of this case.  In order to justify the extensive Witness List, and the presence of 19,366 pages of documents on its Exhibit List, the government states that:

> This is not the prototypical investment fraud indictment involving a single investment scheme, pitched to a discrete group of investors at one time and in one place. The conspiracy alleged here encompasses a series of distinct investment

---

[7] Defense counsel recognizes that these four investors are spouses of investors previously listed.

projects, in different locations, and involving different individuals. While some victims did invest in multiple projects with the defendants, others invested in only a single investment project. Certain documents describing those events may be relevant to only that aspect of the indictment. Instead, the United States will be presenting evidence of series of transactions involving the defendants and drawing on witnesses from California, North Carolina, Texas, Florida and elsewhere. The number of witnesses and potential exhibits, therefore, is likely to be more numerous than a typical fraud trial.

Dkt. 124 at 9.

This is the very argument that the defendants have been making from the outset. This case is not a typical fraud case. The charges encompass multiple discrete projects, in multiple states, over a significant time period.

But then, to distinguish the case from *W.R. Grace*, the government makes an about face and states that "[t]he case at hand is not unusually large or complex. The volume of discovery (35,000 pages) is relatively small for this type of investment fraud case." Dkt. 124 at 11.

*W.R. Grace* stands for the proposition that the District Court is empowered to control its docket by issuing pretrial orders that are appropriate to the case, taking into account that case's complexity, the actions of the government, and the rights of the defendants. That is what the defendants have asked for in this case, time and again. Throughout, the government has resisted the defendants' efforts to understand the charges against them, and the moderate remedies provided by the Court.

## V.   Conclusion

As this case stands, the government still has not adequately informed the defendants of the charges made by the Grand Jury, and from its own filings does not appear to be prepared to bring the defendants to trial on those charges. This makes it impossible for counsel to investigate this case and prepare effectively for trial.

REPLY ISO MOT. TO DISMISS; *U.S. v. SHIELDS,* CR 12-410-1 RMW; Page 8

It is counsel's belief that the moderate remedies provided by the Court thus far have failed to rectify the serious constitutional problems in this case.  Therefore , the defendants continue to request that the Court dismiss the indictments without prejudice.

In the alternative, the defendants would request that the trial date be vacated and no new trial date be scheduled until the defense counsel is able to state, on the record, that they have fulfilled their pretrial constitutional obligations to the best of their ability; or until an impartial referee has determined that they have done so.  Else, the Court may be put into the position of having to relieve counsel based on counsel's belief that they have failed to fulfill their pretrial obligations under the constitution of the United States.

Respectfully submitted,

Dated: September 27, 2013

NOLAN, ARMSTRONG & BARTON LLP

By  /s
    Thomas J. Nolan
    Attorney for Defendant
    Melvin Russell Shields

Dated: September 27, 2013

BERLINER COHEN

By  /s
    Frank Ubhaus
    Attorney for Defendant
    Michael Sims

Dated: September 27, 2013

By  /s _____
    Graham Archer
    Attorney for Defendant
    Sam Stafford